## WAILS et al. v. BOARD OF COUNTY COM'RS, OKMULGEE COUNTY.

No. 21071. Opinion Filed April 5, 1932.

Steele & Boatman, for plaintiffs in error.

James W. Irwin and Chas. A. Dickson, for defendant in error.

KORNEGAY, J. In this proceeding it is sought to reverse the action of the district court of Okmulgee county refusing to interfere with the districting of Okmulgee county by its county commissioners by an order made by them on July 29, 1929. The order was by unanimous vote. The county attorney refused, on demand, to appeal from the order. Some citizens, Charles E. Wails and 60 others, identity and names not being fully disclosed, by attorneys, gave notice of intention to appeal to the district court from the order on the 12th day of August, 1929. An undertaking for costs was signed by Charles E. Wails as principal, and several persons of Morris as sureties, and was approved August 12, 1929, by the county clerk.

An assigned judge heard the case October 3, 1929. Defendants filed motion to dismiss because the matter complained of was administrative and plaintiffs were not aggrieved. The court overruled the motion and heard the case. Plaintiffs offered an exhibit purporting to be the demand of some 40 citizens and freeholders of Morris, Okla., and some 20 citizens of Bald Hill township requesting the county attorney to appeal, and his refusal, and two maps showing the districts before and after they were changed. By the change the congressional township Bald Hill was transferred from district 1 to district 2, and Morris from district 1 to district 3, and Pasco township, lying north of Deep Fork creek, was transferred to district 1 from district 2. All districts before the change could be classed as "compact" with reasonable precision. The same after the redistricting. By the change the road from Bristow to Muskogee was throughout the county included in district 1. Before, it was partly in 2 and 1. The road from Okmulgee to Muskogee, formerly partly in district No. 1, was partly placed in district No. 2 and partly in district No. 3.

By the federal census of 1920, old district No. 1 had 10,571 people. The new had 8,885. District No. 2 had 27,276 people as compared with 26,002, district No. 3, 17,225, as compared with 20,215. According to the returns on sheriff's election in 1928, by the change district No. 1 lost 732 voters, district No. 2 lost 220 voters, and district No. 3 gained 952.

Proof was made that the persons who requested the county attorney to appeal were taxpayers, and the appellants rested and a demurrer was interposed and overruled. The county engineer was called. District No. 1 was changed in area from 272 square miles to 236 square miles, No. 2 from 272 to 258, and No. 3 from 162 to 216.

Under the old districting the repair headquarters for road machinery used in district No. 1 were at Morris. Headquarters for district No. 2 were at Okmulgee, and required transportation of road machinery intended to be used in the northwest part of the county by Beggs to reach place of work over hard surface road, owing to weight of machinery and bridge difficulties on the Deep Fork creek. The cross-examination brought out that the repair shops had been maintained at Morris and the election of the commissioner from there at all times before the last election, and that now the commissioner's headquarters were at Okmulgee for district No. 2 and Henryetta for district No. 3, in which Morris was located by the change.

The chairman of the board testified to a saving of $5,000 per year in road maintenance in district No. 1 by reason of the change, lessening bridge crossing dangers with heavy road machinery, and the necessity of taking tractors over concrete roads, and making places of work more accessible. The road work was the largest item of expenditure by the commissioners, and one-third of the funds were handled by each of the commissioners.

The case was argued and the judge gave at length his views. They appear to recognize the expediency of allowing all departments of government to function with as little interference by the judiciary as possible. He held that the matter was justiciable by the court, but did not warrant the application of judicial force, and declined to interfere and decided to let the districting, done by the county commissioners, stand. He undertook to distinguish various declarations in published opinions.

Briefs, aggregating 140 pages, have been submitted. The statute under which the districting was had is chapter 65 of the Acts of the Legislature of 1925, as follows:

"Be it Enacted by the People of the State of Oklahoma:

"County-County Commissioners' Districts.

"Section 1. That section 5776, of the Compiled Statutes of Oklahoma, 1921, be and the same is hereby amended to read as follows:

"'Section 5776. Each county shall be divided by the board of county commissioners into three compact districts, as equal in population as possible, numbered respectively one, two and three, and subject to alteration not more than once in three years; and one commissioner shall be elected from each of said districts by the voters of the district, as heretofore provided'."

The emergency was attached.

Oral argument was made by plaintiffs in error. Some stress is laid on the question of the matter being appealable to the district court. We do not deem it necessary to critically re-examine that question in view of the comprehensive language of the statute, section 5834, C. O. S. 1921, and the declaration contained in Board of Co. Com'rs of Cherokee Co. v. Hatfield, 121 Okla. 28, 247 P. 77.

The question here presented is, whether the district court committed error in refusing to set aside the districting acts of the county commissioners. The evidence, if any, before the county commissioners, on which they made the order of districting, is not here, and therefore we are confined to a consideration of the manner of the performance by the county commissioners of their duties, as prescribed by law, on the showing made in the district court. Evidently they acted in good faith, and for what they thought best for the people of the county.

We do not think that the suggestion contained in one of the briefs, at pages 39 and 40, is allowable. Said suggestion is as follows:

"* * * That this court will take judicial knowledge of the fact that the principal thing that a board of county commissioners does in the state of Oklahoma is play politics, and that this is what this board is attempting to do in entering the order complained of, but that the Legislature has so far not seen fit to designate and classify a part of their official duties as 'political' as herein insisted on by defendant in its answer brief."

Undoubtedly large discretion is reposed, and must be reposed, in the board of county commissioners on the question of redistricting the county, and in acting they would act naturally with a view of making the burdens of those required to bear the expense as light as possible, as well as expending the funds to the best advantage, not only of the residents of their county, but for the benefit of their neighbors.

One of the most necessary things is road building and maintenance, which is neces-

sarily local in nature, though everybody uses the roads and the state is vitally interested. Large cities sometimes grow in counties whose population will frequently far outnumber the remaining parts of the county. Evidently when the statute requires that "each county shall be divided into three compact districts," it has reference to the land contained in the county. The presumption from such language is for equality in area as near as practical, and that each district be "compact," which carries with it the idea of being closely united, or, as expressed in the Webster's International Dictionary:

"Closely or firmly united or packed, as the particles of solid bodies; firm; solid; dense; as a compact texture in rocks; also, lying in a narrow compass or arranged so as to economize space; having a small surface or border in proportion to contents or bulk; close; as, a compact estate; a compact order or formation of troops."

Evidently the commissioners have endeavored to divide the county into three compact districts, and have equalized in area and compact location. They have also evidently followed economic lines. Apparently the "aggrieved" parties here are complaining, as judged by the examination of witnesses, because they will no longer enjoy the privilege of the road machinery, repair shops, and a resident county commissioner. We think that the law of average at times is equitable, and that the threatened loss of such a monopoly is scarcely ground of court appeal.

As to the population, that is by the statute left to the commissioners. Evidently the purpose of the districts being compact is to prevent the election of all the commissioners from the same locality, so that all parts of the county may be looked after and cared for. As applied to Okmulgee county, with the city of Okmulgee containing practically one-third of the population, and embracing a few square miles, it would be almost impossible to harmonize the division by population with the idea of three compact districts, except by cutting it into a district by itself with a resident commissioner.

As applied to the standard of the 1920 census, the county commissioners could scarcely use that consistently in 1929, with the large and violent fluctuation in population. The county commissioners certainly know more as to the local necessities than a district judge ordinarily would and the judge recognized that, and did not think he should interfere with the county commissioners in the conscientious performance of duty.

Several cases are relied on, some to sustain the contention of plaintiffs in error, some the opposite. An examination of them in detail would not materially aid here, as each is largely based on local conditions. Under our municipal system, the county commissioners have very little to do with city affairs, as they are generally independent in road and school matters. As applied to Okmulgee county, Okmulgee, the county seat, according to the census, probably has one-third of the population of the county. The voting strength of its population is greater in most instances than that of a like number in thinly settled districts. The northern part of the county is much less densely populated than the southern part. Morris lies east of Okmulgee about five miles and south one mile. Geographically it would belong in the Okmulgee district. Under these conditions, it likely will lose its dominating influence, but that should not outweigh economy and general welfare. Its location in a district was by law left to the county commissioners.

The lower court could not see its way clear to disturb the action of the county commissionars. We do not think we should reverse its action. The case is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.